IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

EUFAULA DRUGS, INC., *et al.*,        )
                                      )
         Plaintiffs,                  )
                                      )
v.                                    )   CASE NO. 2:05-cv-293-MEF
                                      )
TDI MANAGED CARE SERVICES,            )   (WO - Recommended for Publication)
INC., *et al.*,                       )
                                      )
         Defendants.                  )

## MEMORANDUM OPINION AND ORDER

This cause is before the Court on Plaintiff's Motion to Certify Class (Doc. # 88), filed

January 25, 2008.  Named Plaintiffs are two pharmacies that have brought breach of contract

claims against Defendants TDI Managed Care Services, Inc. ("TDI") and Eckerd Health

Services ("EHS").  Plaintiffs allege that Defendants failed to properly reimburse pharmacies

for the drugs they dispensed to patients in accordance with the terms of their contract.

Plaintiffs seek to certify a class of pharmacies that had similar contracts with Defendants.

For the reasons stated below, this Court finds that Plaintiffs' Motion to Certify Class is due

to be GRANTED.

## I.  FACTS AND PROCEDURAL HISTORY

The two defendants named in this action are actually a single entity owned by J.C.

Penney, Inc. and known during the early 1990s as TDI.  In 1994, J.C. Penney acquired

Eckerd Drugs, Inc., and "Eckerd Health Services" became the trade name under which TDI

conducted business.  This Court will therefore refer to Defendants collectively as EHS.

EHS is a pharmacy benefits manager ("PBM") that contracts with insurers, managed care organizations, and employers to administer their prescription benefit plans.  As part of its administration duties, EHS contracts with chain and independent pharmacies ("network pharmacies") to dispense prescription drugs to people covered by the plans that EHS administers ("end users").  When an end user goes to a network pharmacy to fill a prescription, the pharmacy submits a request for approval to dispense the prescription and obtain reimbursement from EHS; this request is known as a "claim."  Such claims are transmitted to EHS instantaneously and electronically.  When EHS approves a claim, it transmits back to the pharmacy the total reimbursement amount, which includes the amount to be paid by EHS and the amount to be paid by the end user, for that prescription.

EHS calculates the amount it will pay the pharmacy for the prescription using the Average Wholesale Price ("AWP").  EHS typically reimburses brand drug prescriptions based on a percentage discount from AWP for each brand drug prescription filled by the pharmacy.  EHS generally utilized a standard form contract, called the Pharmacy Network Agreement ("the Agreement"), to contract with its network pharmacies.  The Agreement defined "AWP" as "the current average wholesale price of a Covered Drug listed in First Databank's Bluebook or other nationally recognized price source designated by [EHS]." Every brand drug has a unique AWP that is made available through certain drug database publishers. Furthermore, because AWP values fluctuate, PBMs receive periodic updates for

2

each brand drug's AWP from these publishers.

EHS received AWP updates from the drug database publisher Medi-Span. Medi-Span offers AWP update services on a daily, weekly, or monthly basis. Daily updates would yield the shortest amount of time between a change in AWP, and when a PBM's database would reflect the new AWP. Monthly updates would have the longest lag time in updating a PBM's AWP. Until October 28, 2003, EHS received weekly AWP updates from Medi-Span. After October 28, 2003, EHS switched to daily updates.

During the proposed class period, EHS contracted with approximately 10,000 pharmacies throughout the United States. Plaintiff Eufaula Drugs owns and operates a retail pharmacy in Eufaula, Alabama and entered into a contract with EHS to be a network pharmacy. Plaintiff Scott-Cook owns and operates a retail pharmacy in Dothan, Alabama and entered into a contract with EHS to be a network pharmacy.

Plaintiffs filed this action in the Circuit Court of Barbour County on February 14, 2005. Defendants filed a Notice of Removal in this Court on March 30, 2005. Finding that it had subject matter jurisdiction, this Court denied Plaintiffs' Motion to Remand on April 14, 2006.

## II. JURISDICTION AND VENUE

This Court has already held that it has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d) ("CAFA"). *See Eufaula Drugs, Inc. v. TDI Managed Care Servs., Inc.*, No. 05-cv-293 (M.D. Ala. Dec. 14,

2005) (holding that this action "commenced" after the effective date of CAFA); *id.* (Apr. 14, 2006) (holding that $5,000,000 amount in controversy requirement under CAFA was satisfied); *see also Main Drug, Inc. v. Aetna U.S. Healthcare, Inc.*, 455 F. Supp. 2d 1317 (M.D. Ala. 2005) (Fuller, C.J.) (holding CAFA applied to class action filed under nearly identical factual circumstances).[1]

The parties do not contest venue, and the Court finds an adequate factual basis for venue in this Court.

## III. DISCUSSION

Plaintiffs claim that EHS's use of weekly AWP updates breached the Agreement, which defined AWP as "the *current* average wholesale price of a Covered Drug." (emphasis added). Plaintiffs contend that this provision required EHS to use the most frequent AWP updates available, which would have been daily updates. Due to EHS's use of weekly AWP

---

[1]     In *Tmesys v. Eufaula Drugs, Inc.*, 462 F.3d 1317 (11th Cir. 2006), the Eleventh Circuit affirmed a decision by Judge Myron H. Thompson which remanded a factually identical case based upon a lack of subject matter jurisdiction. However, the Circuit's holding in *Tmesys* was limited to

> (1) whether we have jurisdiction to review an order remanding a case based on a finding that CAFA does *not* apply and (2) what law controls as to when an action has "commenced" for purposes of CAFA.

*Id.* at 1319 (emphasis in original). Accordingly, while the Circuit affirmed Judge Thompson's decision to apply state law, as opposed to federal law, to the facts of that case, they did not entertain the merits of Tmesys's argument that the action commenced after the effective date of CAFA. *See id.* Therefore, *Tmesys* does not require this Court to revisit its prior holding in this case that under Alabama law this action commenced after the effective date of CAFA.

updates, Plaintiffs allege that network pharmacies have lost approximately $16.1 Million in reimbursements that they would have received if EHS had used daily updates.

Plaintiffs are seeking certification under Federal Rule of Civil Procedure 23(b)(3) of a class defined as:

> All pharmacies and/or other similar entities who entered into a contract which provided for reimbursement of prescriptions according to a formula which included the Average Wholesale Price ("AWP") with Defendant and/or its predecessors in interest, their successors in interest, and/or their subsidiaries and/or their related entities on or after February 14, 1999.

In order to be certified as a class action, the named plaintiffs must have standing,[2] and the putative class must meet each of the requirements specified in Rule 23(a), as well as at least one of the requirements set forth in Rule 23(b). *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1321 (11th Cir. 2008). The burden of proof to establish the propriety of class certification rests with the advocate of the class. *Id.*

In this case, EHS does not challenge that the numerosity requirement of Rule 23(a) is satisfied. The Court will address each of EHS's challenges to the remaining Rule 23 requirements below.

## A.    Typicality - Rule 23(a)(3)

The typicality requirement measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large. *Busby*, 513 F.3d at 1322. All putative class members are not required to have identical claims, and factual differences

---

[2]    Defendants do not dispute that Plaintiffs have standing in this case.

among the claims of the putative class members do not defeat certification. *Cooper v. S. Co.*, 390 F.3d 695, 714 (11th Cir. 2004). However, the named plaintiffs' claims must still share the same essential characteristics as the claims of the class at large. *Id.*

EHS argues that Plaintiffs' claims are not typical because they both adjudicated claims through third party contracts for at least part of the proposed class period, and did not contract directly with EHS. Plaintiffs have presented evidence that they were members of Pharmacy Service Administration Organizations ("PSAO"). PSAOs are member-owned group-purchasing organizations designed to protect and promote the interests of independent pharmacies by improving their bargaining positions through group purchasing agreements, third-party contracts, and vendor discounts. EHS contracted with several PSAOs of which Plaintiffs were members. Pursuant to these PSAO agreements, Plaintiffs submitted claims to and received reimbursements from EHS. No evidence has been presented to this Court that Plaintiffs' reimbursement through PSAO contracts, which used the definition of AWP contained in the Agreement, was different in any way from a retail pharmacy's reimbursement through contracts negotiated directly with EHS.

Accordingly, PSAOs and independent retail pharmacies share the same "essential characteristics" justifying treatment as a class action—both groups filled prescriptions for members of EHS's benefit plans, submitted claims for reimbursement to EHS, were reimbursed by EHS according to the same basic formula, pursuant to contracts containing the same definition of AWP. Consequently, Plaintiffs claims are typical of the class at large

6

within the definition of Rule 23(a)(3).

**B.     Commonality - Rule 23(a)(2)**

The commonality requirement of Rule 23(a)(2) "measures the extent to which all members of a putative class have similar claims." *Cooper*, 390 F.3d at 714.   The commonality analysis is therefore similar to the typicality analysis; however, commonality refers to the group characteristics of the class as a whole while typicality refers to the individual characteristics of the named plaintiff in relation to the class. *Id.*   Under the commonality requirement, the class action must involve issues that are susceptible to class-wide proof.   *Id.*   Moreover, the commonality requirement does not mandate that all putative class members share identical claims, and factual differences among the claims of the putative class members do not defeat certification.   *Id.*

Many of the issues relevant to the commonality requirement are addressed in Part III.A (Typicality) above and Part III.D (Predominance) below.  For the reasons articulated in these sections of this opinion, this Court is convinced that the claims of the putative class members are similar enough to fulfill the commonality requirement of Rule 23(a)(2).

**C.     Adequacy - Rule 23(a)(4)**

EHS further contends that Plaintiffs are inadequate representatives of the class.  *See* Fed. R. Civ. P. 23(a)(4).  The adequacy requirement encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action. *Busby*, 513 F.3d

at 1323.  The adequacy requirement applies to both the named representatives and counsel.

*London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1253 (11th Cir. 2003).

### 1.     Representatives Will Adequately Prosecute the Action

EHS argues that Plaintiffs are inadequate representatives because the representatives lack sufficient interest in the litigation, which is, according to EHS, being driven by the lawyers.  In *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 728 (11th Cir. 1987), a class action involving securities, the Eleventh Circuit held:

> in securities cases such as these, where the class is represented by competent and zealous counsel, class certification should not be denied simply because of a perceived lack of subjective interest on the part of the named plaintiffs unless their participation is so minimal that they virtually have abdicated to their attorneys the conduct of the case.

The Circuit has reaffirmed that the holding in *Kirkpatrick* regarding adequacy was "carefully limited" to the securities context.  *London*, 340 F.3d at 1254.  The Circuit stated that the holding was limited to the securities context "[b]ecause the issue of adequate class representation arises in a wide variety of contexts, it would be inappropriate for us to establish a standard for general application."  *Kirkpatrick*, 340 F.3d at 727-28.  Accordingly, there is no general rule for deciding whether named representatives are adequate.  *See id.* at 728; *London*, 340 F.3d at 1254.

Courts have on occasion found that named representatives were inadequate under Rule 23(a)(4) in cases where it appeared that the representatives demonstrated a fundamental lack of knowledge about the case.  *See, e.g.*, *Ogden v. AmeriCredit Corp.*, 225 F.R.D. 529,

534-35 (N.D. Tex. 2005) (finding named representative inadequate where plaintiff was solicited by class counsel for the lawsuit, had done no independent investigation into the background and experience of class counsel, and demonstrated a lack of knowledge about the case); *Jones v. CBE Group, Inc.*, 215 F.R.D. 558, 568-69 (D. Minn. 2003) (finding representative inadequate where plaintiff had no financial incentive to pursue the action as a class action, as opposed to individually, and he was confused and unfamiliar with many aspects of the case); *Darvin v. Int'l Harvester Co.*, 610 F. Supp. 255, 257 (S.D.N.Y. 1985) (finding representative inadequate where plaintiff had limited or nonexistent personal knowledge of the facts of the case).  However, in these cases, the named representatives exhibited a complete lack of understanding of the most basic principles of their lawsuit.  *See, e.g.*, *Ogden*, 225 F.R.D. at 534 ("Ogden's knowledge regarding her suit does not comport with this standard. A review of her deposition indicates that her only basis for her suit is that bad things occurred and the defendants must have been involved simply because of their various relationships with AmeriCredit.").  Moreover, it is not a requirement of Rule 23 that the named representatives be the "driving force" behind the litigation.  *See Kirkpatrick*, 827 F.2d at 727 ("[A]dequate class representation generally does not require that the named plaintiffs demonstrate to any particular degree that individually they will pursue with vigor the legal claims of the class. . . . [T]he economics of the class action suit often are such that counsel have a greater financial incentive for obtaining a successful resolution of a class suit than do the individual class members.").

9

EHS argues that Eufaula Drugs is an inadequate representative based upon certain admissions during the deposition of Jim Scarborough ("Scarborough"), the owner of Plaintiff Eufaula Drugs. Scarborough admitted in his deposition that he did not believe EHS was breaching their contract until January 2005 when he was approached by counsel. Scarborough also stated that he had no personal knowledge of whether any claim submitted by Eufaula Drugs was reimbursed using an improper AWP. Scarborough stated that he had no knowledge of what frequency of AWP updating EHS used at any time since 1999. Scarborough admitted that he has no basis for believing EHS has used improper AWP beyond his conversations with counsel.

However, none of these facts demonstrate that Eufaula Drugs would be an inadequate class representative. To the contrary, Scarborough's deposition makes it apparent that he understands that his claim is based upon insufficient reimbursement for prescription drugs due to EHS's delay in updating AWP. Therefore, Scarborough does not demonstrate the fundamental lack of knowledge of his case that is generally required to be found an inadequate representative under Rule 23(a)(4).

With respect to Plaintiff Scott-Cook, owner Marvin Cook, Jr. ("Cook") stated during his deposition that he joined the lawsuit because he believed he was being reimbursed unfairly by all PBMs, not just EHS. The basis for his belief is the fact that his reimbursements are very close to his actual costs for each prescription drug. Cook does not know what the terms of his contract were as far as defining AWP. Cook doesn't believe he

is being treated fairly because he doesn't think the reimbursements he receives from any PBM are adequate.

While Plaintiff Scott-Cook presents a closer case than Plaintiff Eufaula Drugs, this Court believes that Plaintiffs have presented sufficient evidence that Scott-Cook is an adequate class representative. None of the evidence referenced above, which was submitted by EHS through excerpts of Cook's deposition, is mutually exclusive with an understanding of the nature of the claims in this case. On the other hand, Plaintiffs have submitted evidence, in the form of affidavits and deposition excerpts, that demonstrates that Cook has attended numerous meetings with class counsel to assist the litigation and does understand the nature of his claims.

While this Court finds Plaintiff Scott-Cook to be an adequate representative at this time, the Court always has the right to revisit this issue should it later become apparent that any representative is inadequate for any reason. *See London*, 340 F.3d at 1254 ("[B]asic consideration of fairness requires that a court undertake a stringent and continuing examination of the adequacy of representation by the named class representative at all stages of the litigation where absent members will be bound by the court's judgment.").

### 2.     No Substantial Conflict of Interest

EHS also challenges Plaintiffs' adequacy on the ground that they have substantial conflicts of interest with the putative class members. EHS points to Walgreens, which submits approximately 2.4 million claims per year to EHS, compared to Scott-Cook's 389

in two years.  EHS argues that because Plaintiffs have a potentially low amount of damages relative to a few of the putative class members, their incentive to adequately represent the class is insufficient.  EHS claims this is a conflict of interest with the class members who have large damages that warrants denial of class certification.

Courts will generally reject a named representative based upon a conflict of interest created by a pre-existing relationship with class counsel.  *See, e.g.*, *London*, 340 F.3d at 1254 (holding that district court abused its discretion by failing to consider plaintiff's "significant personal and financial ties" to class counsel).  However, the fact that named representatives have a small stake in the litigation does not make them inadequate; indeed, it is the principal justification for class actions—using a cost spreading mechanism to allow plaintiffs to bring suits that otherwise would not be profitable.  *See Kirkpatrick*, 827 F.2d at 727 ("[T]he financial incentives offered by the class suit serve both the public interests in the private enforcement of various regulatory schemes . . . and the private interests of the class members in obtaining redress of legal grievances that might not feasibly be remedied within the framework of a multiplicity of small individual suits for damages." (internal quotation marks omitted)).

Because Plaintiffs are attempting to certify an opt-out class under Rule 23(b)(3), Walgreens, as well as any other putative class member, is free to opt-out of the class and pursue their own lawsuit.  If the existence of a few putative class members with relatively large damages was a justification for denying certification of a class, then there would be no

12

mechanism for the individuals with relatively small damages to vindicate their rights. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) (noting that the purpose of Rule 23(b)(3) is to vindicate "the rights of groups of people who individually would be without effective strength to bring their opponents into court at all"). Accordingly, the evidence before this Court demonstrates that no substantial conflict of interest exists between the named representatives and putative class members.

### 3. Personal Characteristics and Integrity

EHS argues that Eufaula Drugs is an inadequate representative because it submitted discovery responses that concealed the existence of an investigation of Scarborough and Eufaula Drugs by the Alabama State Board of Pharmacy ("the Board"). EHS submitted interrogatories and document requests to Eufaula Drugs that sought information concerning any disciplinary proceedings before the Board. Eufaula Drugs objected that such information was only relevant to proceedings involving Eufaula Drugs itself, because no individual (e.g., Scarborough) was seeking to serve as class representative. Eufaula Drugs then responded that, subject to those limitations, no such documents exist.

EHS investigated the matter further and discovered that Scarborough was the subject of two Board proceedings, in 2001 and 2004, concerning the over-dispensing of controlled substances to pharmacy patients without prescriptions. The 2004 proceeding also named Eufaula Drugs as a respondent. As a result of these proceedings, Scarborough's license was suspended for one year and Eufaula Drugs paid a civil fine. No authorized representative of

13

Eufaula Drugs signed the interrogatory answers that erroneously stated Eufaula Drugs had not been the subject of any disciplinary proceedings. This failure to sign the interrogatories constituted a violation of Rule 33(b)(5). At his deposition, Scarborough stated that the answer was false and explained the circumstances of Eufaula Drugs' fine in the 2004 proceeding.

Rule 33(b)(5) requires that "[t]he person who makes the [interrogatory] answers must sign them." No authorized representative of Eufaula Drugs signed the disputed interrogatory. Accordingly, EHS argues that Eufaula Drugs' failure to comply with its obligations under Rule 33 is evidence that it is an inadequate representative.

The disputed interrogatory was not signed by a representative of Eufaula Drugs, but it was signed by Eufaula Drugs' counsel. Rule 26(g)(1) provides that "every discovery request, response, or objection must be signed by at least one attorney of record." Furthermore, Rule 26(g)(1)(A) provides that the effect of such signature is that the attorney is certifying to the court that "with respect to a disclosure, it is complete and correct as of the time it is made." Furthermore, Rule 11(b)(3) provides that when an attorney presents a court with a document bearing his signature, he is certifying to the court that the "factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."

In light of the fact that the interrogatories were signed by counsel, this Court does not feel that Eufaula Drugs' failure to sign the interrogatories makes them inadequate to serve

as a named representative.  Moreover, with respect to the conduct of Plaintiffs' counsel in this matter, "[o]nly the most egregious misconduct on the part of plaintiffs' lawyer could ever arguably justify denial of class status." *Busby*, 513 F.3d at 1323-24.  Particularly in light of the fact that Plaintiffs corrected the record during Scarborough's deposition, this Court does not find that this rises to the level of "the most egregious misconduct."  Therefore, this does not constitute a sufficient basis for the denial of class certification.

### D.      Predominance - Rule 23(b)(3)

EHS argues that the class can not be certified because Plaintiffs have failed to meet their burden of proof regarding predominance under Rule 23(b)(3).  According to EHS, individualized proof will be required on the issues of whether EHS breached its contract with each class member, and whether each class member waived the breach.

In order to certify a class pursuant to Rule 23(b)(3), this Court must find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  Furthermore, Rule 23(b)(3) does not require that all questions of law or fact be common, but only that some questions are common and that they predominate over individual questions. *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004).  In determining whether class or individual issues predominate in a putative class action suit, this Court must take into account the claims, defenses, relevant facts, and applicable substantive law to assess the degree to

15

which resolution of the classwide issues will further each individual class member's claim against the defendant. *Id.*

Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief. *Id.* at 1255. If after adjudication of the classwide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims, such actions are not suitable for class certification under Rule 23(b)(3). *Id.* Accordingly, this Court must review substantive law regarding Plaintiffs' claims in order to determine whether the questions of law or fact that are common to the class predominate over individual questions. *See id.*

Defendants argue that Plaintiffs' claims will require individualized proof regarding whether EHS breached the Agreement because evidence regarding each class member's belief and understanding regarding the meaning of the term "current" in their contract will be necessary to resolve the ambiguity of the term. Under Pennsylvania law,[3] the parol

---

[3]     When a federal court decides a state law claim it applies the choice-of-law rules of the jurisdiction in which it sits. *Benchmark Med. Holdings, Inc. v. Rehab Solutions, LLC*, 307 F. Supp. 2d 1249, 1258-59 (M.D. Ala. 2004) (Albritton, C.J.) (citing *Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.*, 135 F.3d 750, 752 (11th Cir. 1998). In contractual disputes where the contract contains a choice of law provision, Alabama law requires the court to apply the law of the sovereign that the parties have chosen. *Stovall v. Universal Const. Co., Inc.*, 893 So. 2d 1090, 1102 (Ala. 2004). Here, the Agreement contains a choice of law provision that specifies that it should be interpreted in accordance with the law of the State of Pennsylvania. Furthermore, the parties do not dispute that

evidence rule bars evidence of previous oral or written negotiations involving the subject matter of a written contract absent fraud, accident, or mistake.  *See Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 436-37 (Pa. 2004).  However, where a term in the parties' contract is ambiguous, parol evidence is admissible to explain or clarify or resolve the ambiguity, irrespective of whether the ambiguity is created by the language of the instrument or by extrinsic or collateral circumstances.  *See id*; *Sunbeam Corp. v. Liberty Mut. Ins. Co.*, 781 A.2d 1189, 1193 (Pa. 2001) (citing Restatement (Second) of Contracts § 220).

EHS has presented this Court with several affidavits from major pharmacies in order to establish that individualized proof will be necessary to establish course of dealing.  However, none of the affidavits EHS has presented demonstrate that any pharmacy knew that EHS was utilizing weekly AWP updates in the course of the parties' performance, which would be required to establish a course of dealing.  *See* Restatement (Second) of Contracts § 220 ("An agreement is interpreted in accordance with a relevant usage *if each party knew or had reason to know of the usage* and neither party knew or had reason to know that the meaning attached by the other was inconsistent with the usage.").  Moreover, if this Court were to accept EHS's argument, then there would be virtually no circumstance in which a breach of contract dispute would be susceptible to a class action.  Indeed, Plaintiffs' claims arise out of a form contract EHS executed with thousands of potential plaintiffs nation-wide.

---

Pennsylvania law applies to the breach of contract claim.  Consequently, this Court finds that the Agreement will be construed according to Pennsylvania law.

Similar claims have been held to be properly certified as class actions. *See, e.g.*, *Kleiner v. First Nat'l Bank of Atlanta*, 97 F.R.D. 683, 692 (N.D. Ga. 1983) ("When viewed in light of Rule 23, claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action, and breach of contract cases are routinely certified as such." (citing cases)).

EHS also argues that individualized proof will be necessary to establish whether each class member waived the alleged breach.  Pennsylvania law establishes that waiver is the act of intentionally relinquishing or abandoning some known right, claim or privilege. *Brown v. City of Pittsburgh*, 186 A.2d 399, 401 (Pa. 1962).  To constitute a waiver of legal right, there must be a clear, unequivocal and decisive act of the party with knowledge of such right and an evident purpose to surrender it.  *Id*.  Waiver is a question of intent, and it may be expressed or implied.  *Id*.  However, waiver will not be found to be implied unless the party alleged to have waived a legal right misled the opposite party to its prejudice into the honest belief that such waiver was intended or consented to.  *Id*.  In other words, the doctrine of implied waiver in Pennsylvania applies only to situations involving circumstances equivalent to an estoppel, and the party claiming waiver must show that he was misled to his prejudice. *Id.*

This Court is not persuaded that any potential individualized questions raised by the doctrine of waiver will predominate in this case.  As this Court stated above, there is no evidence that any pharmacy knew EHS was using weekly updates in the course of their

performance.  A party cannot waive a right it does not know it has.  *See Brown*, 186 A.2d at 401.  Moreover, because of the size of the potential class, and the fact that the putative class members' claims will have many common questions of law and fact, this Court also finds that a class action will be superior to other available methods for fairly and efficiently adjudicating this controversy. Accordingly, this Court is convinced, based on the evidence before it, that Plaintiffs have met their burden to show that the requirements of Rule 23(b)(3) have been met.

## IV.  CONCLUSION

For the reasons stated above, it is hereby ORDERED that

(1)     Plaintiff's Motion to Certify Class (Doc. # 88) is GRANTED.

(2)     The Parties' Joint Motion for Hearing and Oral Argument on Plaintiffs' Motion for Class Certification (Doc. # 100) is DENIED.

(3)     Defendants' Motion for Leave to File Reply Brief In Opposition to Plaintiffs' Memorandum Brief in Response to the Court's Order Dated April 22, 2008 (Doc. # 123) is DENIED.

DONE this 17th day of June, 2008.

                    /s/ Mark E. Fuller
          CHIEF UNITED STATES DISTRICT JUDGE