IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| EUFAULA DRUGS, INC., *et al.*,     ) | |
|                                    ) | |
|     Plaintiffs,                    ) | |
|                                    ) | |
| v.                                 ) | CASE NO. 2:05-cv-293-MEF |
|                                    ) | |
| TDI MANAGED CARE SERVICES,         ) | (WO) |
| INC., *et al.*,                    ) | |
|                                    ) | |
|     Defendants.                    ) | |

**MEMORANDUM OPINION AND ORDER**

This cause is before the Court on Defendants' Motion for Summary Judgment (Doc. # 117) filed on May 5, 2008. Also before the Court is Plaintiffs' Motion for Summary Judgment (Doc. #120) filed on May 5, 2008, Plaintiffs' Motion to Strike (Doc. #132) filed on May 27, 2008, and Defendants' Motion to Strike (Doc. #136) filed on June 3, 2008. Named Plaintiffs are two pharmacies that have brought breach of contract claims against Defendants TDI Managed Care Services, Inc. ("TDI") and Eckerd Health Services ("EHS"). Plaintiffs allege that Defendants failed to properly reimburse pharmacies for the drugs they dispensed to patients in accordance with the terms of their contract. In their respective motions, both parties argue that they are entitled to summary judgment based on the unambiguous language of the contract. For the reasons stated below, this Court finds that Defendants' Motion for Summary Judgment is due to be DENIED and Plaintiffs' Motion for Summary Judgment is due to be DENIED.

## I.  FACTS AND PROCEDURAL HISTORY

The two defendants named in this action are a single entity owned by J.C. Penney, Inc. and known during the early 1990s as TDI.  In 1994, J.C. Penney acquired Eckerd Drugs, Inc., and "Eckerd Health Services" became the trade name under which TDI conducted business. This Court will, therefore, refer to Defendants collectively as EHS.

EHS is a pharmacy benefits manager ("PBM") that contracts with insurers, managed care organizations, and employers to administer their prescription benefit plans.  As part of its administration duties, EHS contracts with chain and independent pharmacies ("network pharmacies") to dispense prescription drugs to people covered by the plans that EHS administers ("end users").  When an end user goes to a network pharmacy to fill a prescription, the pharmacy submits a request for approval to dispense the prescription and obtain reimbursement from EHS; this request is known as a "claim."  Such claims are transmitted to EHS instantaneously and electronically.  When EHS approves a claim, it transmits back to the pharmacy the total reimbursement amount, which includes the amount to be paid by EHS and the amount to be paid by the end user, for that prescription.

EHS calculates the amount it will pay the pharmacy for the prescription using the Average Wholesale Price ("AWP").  EHS typically reimburses brand drug prescriptions based on a percentage discount from AWP for each brand drug prescription filled by the pharmacy.  EHS used a standard form contract, called the Pharmacy Network Agreement ("the Agreement"), to contract with its network pharmacies.  The Agreement defined "AWP"

as "the current average wholesale price of a Covered Drug listed in First Databank's Bluebook or other nationally recognized price source designated by [EHS]." Every brand drug has a unique AWP that is made available through certain drug database publishers. Because AWP values fluctuate, PBMs receive periodic updates for each brand drug's AWP from these publishers.

EHS received AWP updates from the drug database publisher Medi-Span. Medi-Span offers AWP update services on a daily, weekly , or monthly basis. The weekly publication Medi-Span offers is the Master Drug Database ("MDDB"). Medi-Span's daily update service is the Daily Drug Update. Daily Drug Update would yield the shortest amount of time between a change in AWP and when a PBM's database would reflect the new AWP. MDDB would have a longer lag time in updating a PBM's AWP. Until October 28, 2003, EHS received weekly AWP updates from MDDB. After October 28, 2003, EHS switched to Daily Drug Update.

During the class period, EHS contracted with approximately 10,000 pharmacies throughout the United States. Plaintiff Eufaula Drugs owns and operates a retail pharmacy in Eufaula, Alabama and entered into a contract with EHS to be a network pharmacy. Plaintiff Scott-Cook owns and operates a retail pharmacy in Dothan, Alabama and entered into a contract with EHS to be a network pharmacy.

Plaintiffs filed this action in the Circuit Court of Barbour County on February 14, 2005. Defendants filed a Notice of Removal in this Court on March 30, 2005. Finding that

it had subject matter jurisdiction, this Court denied Plaintiffs' Motion to Remand on April 14, 2006. On June 25, 2008, the Court granted Plaintiffs' class certification.

## II. JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d) ("CAFA"). *See Eufaula Drugs, Inc. v. TDI Managed Care Servs., Inc.*, No. 05-cv-293 (M.D. Ala. Dec. 14, 2005) (holding that this action "commenced" after the effective date of CAFA); *id.* (Apr. 14, 2006) (holding that $5,000,000 amount in controversy requirement under CAFA was satisfied); *see also Main Drug, Inc. v. Aetna U.S. Healthcare, Inc.*, 455 F. Supp. 2d 1317 (M.D. Ala. 2005) (Fuller, C.J.) (holding CAFA applied to class action filed under nearly identical factual circumstances).

The parties do not contest venue, and the Court finds an adequate factual basis for venue in this Court.

## III. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and

identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324.  To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c).

IV.  DISCUSSION

**A. Breach of contract**

    **i. Pennsylvania contract law**

Federal courts sitting in diversity case must apply the choice of law rules of the forum state.  *See Klaxon Co. v. Stentor Elc. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Clanton v. Inter.Net Global*, 435 F.3d 1319, 1323 (11th Cir. 2006).  Alabama courts generally respect choice of law provisions in contracts and apply the chosen law to substantive issues.  *See Stovall v. Universal Constr. Co.*, 893 So. 2d 1324, 1326 (Ala. 2004); *see also Blalock v. Perfect Subscription Co.*, 458 F. Supp. 123, 126-7 (S.D. Ala. 1978).  The Agreement specifies that it is to be interpreted using the law of Pennsylvania.  Therefore, Alabama's choice of law rules dictate that this Court apply the substantive law of Pennsylvania when interpreting the Agreement.

To establish a breach of contract under Pennsylvania law, a party must show (1) existence of a contract, (2) breach of a duty imposed by the contract, and (3) damages resulting from that breach.  *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053 (Pa. Super. 1999).  If a contract contains unambiguous terms, then a court interprets those terms as a matter of law.  *See Cmty. Coll. of Beaver County v. Cmty. Coll. of Beaver County, Soc'y of the Faculty*, 375 A.2d 1267, 1275 (Pa. 1977); *Lapio v. Robbins*, 729 A.2d 1229, 1232 (Pa. Super. 1999).  To prevail on summary judgment, a party must prove that the contract's language is clear and unambiguous.  *White v. Keystone Ins. Co.*, 775 A.2d 812

6

(Pa. Super. 2001).

If a contract contains terms subject to different yet reasonable interpretations, then a court may consider industry custom or usage to explain their meaning. *See Resolution Trust Corp. v. Urban Redev. Auth.*, 638 A.2d 972, 975 (Pa. 1994) (explaining that the parol evidence rule does not apply in its ordinary strictness where the existence of industry custom explains the meaning of words). Even without ambiguity, evidence of industry custom or trade usage is always admissible and relevant to demonstrate that the words used in a commercial contract have a specialized meaning in the trade or industry. *Sunbeam Corp. v. Liberty Mut. Ins. Co.*, 781 A.2d 1189, 1193 (Pa. 2001).

### ii. "Nationally recognized price source"

Plaintiffs claim that EHS's use of weekly AWP updates through MDDB breached the Agreement, which defined AWP as "the current average wholesale price of a Covered Drug listed in First Databank's Bluebook or other *nationally recognized price source* designated by [EHS]." (emphasis added.) The parties differ on their interpretation of a "nationally recognized price source." Plaintiffs contend that EHS designated publisher Medi-Span as its price source and that the Agreement required EHS to use the most frequent AWP updates available from Medi-Span, the Daily Drug Update. In contrast, EHS argues that it designated the publication MDDB as its "nationally recognized price source" and that the Agreement, therefore, did not require it to use Daily Drug Update.

EHS has submitted scant affidavit and deposition testimony that MDDB and Daily

7

Drug Update are "nationally recognized price sources." In addition, EHS has not submitted any evidence that MDDB and Daily Drug Update are *separate* and *distinct* "nationally recognized price sources." Indeed, Plaintiff argues that the testimony submitted supports the conclusion that Medi-Span is the "nationally recognized price source" and MDDB and Daily Drug Update are merely two of Medi-Span's products. The Court finds conflicting facts in the record on the meaning of "nationally recognized price source" and a lack of evidence that industry custom explains its meaning. Therefore, the Court finds there is a genuine issue of material fact on whether EHS breached the Agreement with Plaintiffs and that neither party is entitled to judgment as a matter of law.

**B. Damages**

Under Pennsylvania law, a party cannot prevail on a breach of contract claim unless that party can show that they suffered damages as a result of that breach. *See CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053 (Pa. Super. 1999); *Logan v. Mirror Printing Co. of Altoona*, 600 A.2d 225, 227 (Pa. Super. 1991).

Plaintiffs allege that network pharmacies have lost approximately $16.1 million in reimbursements that they would have received if EHS had used Daily Drug Update. EHS argues that Plaintiffs did not suffer any damages and were actually overpaid by EHS. In light of the conflicting estimates in the record, the Court finds that the evidence is sufficient to create a triable issue on Plaintiffs' damages.

**C. Motions to Strike**

All of the motions to strike presently before this Court are due to be DENIED AS MOOT due to the fact that whether or not any of the evidence at issue was stricken would not alter this Court's ruling.

## V. CONCLUSION

For the reasons stated above, it is hereby ORDERED that:

(1) Defendants' Motion for Summary Judgment (Doc. # 117) is DENIED;

(2) Plaintiffs' Motion for Summary Judgment (Doc. #120) is DENIED;

(3) Plaintiffs' Motion to Strike (Doc. #132) is DENIED as moot;

(4) Defendants' Motion to Strike (Doc. #136) is DENIED as moot.

DONE this the 12th day of March, 2009.

                                         /s/ Mark E. Fuller
                                CHIEF UNITED STATES DISTRICT JUDGE